IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAN NETHERS,

    Plaintiff and Counterdefendant,

v.                                                                                                  Civ. 03-1286 RLP/WDS

AMERICAN EXPRESS FINANCIAL
CORPORATION and AMERICAN
EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC.,

    Defendants

and

AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC.,

    Counterclaimant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the court on cross motions for summary judgment filed by Plaintiff-Counterdefendant Jan Nethers ("Nethers") and Defendant-Counterdefendant American Express Travel Related Services Company, Inc. ("AMEX"). Nethers and AMEX each move for summary judgment on all counts of the Amended Complaint and AMEX moves for summary judgment on its counterclaim for breach of contract, seeking the unpaid balance due on the credit card and its attorney's fees.

This action was removed to federal court on November 7, 2003 based on diversity of citizenship, 28 U.S.C. § 1332. Plaintiff is a resident of New Mexico; Defendant American Express Financial Corporation is a Delaware corporation with its principal place

of business in Minnesota.[1]   When no damage amount appears in the complaint, "a defendant requesting removal must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.00.  *Varela v. Wal-Mart Stores, East, Inc.*, 86 F.Supp.2d 1109, 1111 (D.N.M. 2000) (Baldock, J.).  Attached to Defendant's Notice of Removal was Plaintiff's settlement letter requesting $65,000 and a "zeroing out" of the disputed credit card debt of $17,555.00.  Plaintiff did not dispute these allegations and filed no motion to remand. The court finds it has jurisdiction.

## SUMMARY JUDGMENT STANDARD

When parties file cross motions for summary judgment, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Familty Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1988).  In this regard, each party as the nonmovant is given "wide berth to prove a factual controversy exists."  *Jeffries v. Kansas*, 147 F.3d 1220, 1228 (10th Cir. 1998) (internal quotation marks and citations omitted). Therefore, the legal standard remains the same: each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1148 (10th Cir. 2000).

---

[1] The complaint filed in state court only listed American Express Financial Corporation as a defendant.  For purposes of diversity jurisdiction, the court looks at the facts as they were at the time the Notice of Removal was filed.  *Varela v. Wal-Mart Stores, East, Inc.*, 86 F.Supp.2d 1109, 1110-11 (D.N.M. 2000) (Baldock, J.).  Even though both defendants' names are retained in the caption, it appears from the Amended Complaint that all causes of action are solely against AMEX.

2

## UNDISPUTED FACTS

In 1995 Nethers was on the board of directors of Automation Specialists, Inc. (the "Company"), a New Mexico corporation. Exhibit 1 to Memorandum Brief in Support of Defendant American Express Travel Related Services Company, Inc.'s Motion for Summary Judgment on the Amended Complaint ("Defendant's Memorandum") [Doc. 59] When the Company applied for credit card(s) with AMEX, Nethers signed the application for the card. *Id.*

> The credit card agreement provides in pertinent part:
>
>> As you read this Agreement, remember the words "you" and "your" mean the person named [on] the enclosed Corporate Card or, where applicable, the Company.
>>
>> You have received this Corporate Card at the request of the Company for use in connection with the Card Account. You will be called a Corporate Cardmember. You will be liable for charges made in conjunction with the Corporate Card issued to you. If you are the officer who authorized us to issue one or more Corporate Cards by signing the Company's application for the Card Account (the "Authorizing Officer"), you agree to be bound by the terms of this Agreement as they apply to the Company.
>> . . .
>> The Company and any Corporate Cardmembers using the Card Account agree both jointly and individually to be bound by the terms of this Agreement.
>> . . .
>> The Company and the Authorizing Officer are liable for all Charges on the Card Account made in connection with all Corporate Cards. If you are a Corporate Cardmember you are liable to us for all Charges made in connection with the Card
>>
>> issued to you, even though we may send bills to the Company and not to you.

Exhibit 2 to Defendant's Memorandum.

The record submitted shows that in March, 1997 the Company account had a balance due of $17,545.59.  In April, AMEX received a check from the Company in that amount which was returned later that same month due to insufficient funds. AMEX debited the wrong account and was aware of a dispute between that cardholder and itself in May, 1997.  Plaintiff's Response to [Defendant's Motions] {Doc. 51], Exhibit 18 thereto.

In June, 1997, AMEX's billing statement to Nethers indicated that the account was "seriously past due." Plaintiff's Motion for Summary Judgment and Supporting Memorandum ("Plaintiff's Motion") [Doc. 50], Exhibit 2.  In July,1997 Nethers received a statement from AMEX showing a balance due of $15,944.48 and notice that the account had been canceled by AMEX.  Plaintiff's Motion, Exhibit 1 (Nethers' Affidavit).   Nethers did not  contact AMEX about  why it had closed the account.  He did, however, contact Morrell to ask him to make the payments.  It was at this time that Nethers sold his interest in the Company to Morrell for $1.00  *Id.* at ¶¶ 12-14.  Morrell kept making payments on the AMEX account until March, 1998.  *Id.* at ¶ 22.  After Morell's last payment, the April 1, 1998 AMEX statement showed a balance due of $8,848.46 which Nethers paid himself.  *Id.*

In December, 1998 Nethers received a statement from AMEX showing a balance due of $17,555.59 (the $17,545.59 plus a $10.00 late fee). *Id.* at ¶ 24 & Exhibit 10 thereto. Nethers did not receive a complete explanation from AMEX until June 22, 1999 when, after Nethers had retained counsel and many letters had passed back and forth, AMEX detailed the events of April and May 1997.  Plaintiff's Motion, Exhibit 15.  At some point in time, AMEX reported the disputed debt to credit agencies.

4

**DISCUSSION**

The lawsuit arises from the interpretation of the foregoing undisputed facts. Nethers claims AMEX violated New Mexico's Unfair Practices Act, §§ 57-12-1 *et seq*. (the "UPA"), made negligent misrepresentations, was negligent in its accounting practices, committed fraud, and breached its contract and contract of guaranty.  The breach of contract claims arise from Nethers' contention that he is not primarily responsible for the debt; the other claims arise from the delayed billing of the past due account.  Because whether or not the debt is Nethers' responsibility is central to all pending motions for summary judgment, that issue is addressed first.

In his Affidavit, Nethers asserts:

> 3.  In 1995, I signed an application as guarantor only for an Executive Corporate American Express credit card for Automation Specialists, Inc. . . . .
>
> 4.  I signed the application as guarantor for the Automation Specialists Executive Corporate American Express card with the understanding that American Express would bill Automation Specialists, Inc., and look first to Automation Specialists for payment of amounts charged to the account.

Exhibits 1 and 2 to Nethers' Affidavit are 1997 statements from AMEX.  Nethers' name is at the top of the statement and shows a billing address at Automation Specialists. The statements indicate that the "Corporate Account Number" is the same as Nethers' account number: 3783-468982-51005.  The other two individuals listed on the statement, Jerry Morrell and Monte Rhodes, each have different card numbers.

Nethers attaches no documents to his Affidavit showing that he is somehow not bound by the terms of the contract. Nor does he dispute the terms of the contract

5

submitted by AMEX.  Nor does he identify any terms in the agreement indicating he is merely a guarantor who is secondarily liable.  He merely states he "understood" he would not be liable.

As quoted above, the corporate card agreement -- which goes into effect when the card is used -- states that: "*The Company and any Corporate Cardmembers using the Card* Account agree both *jointly and individually* to be bound by the terms of this Agreement."  Exhibit 2 to Defendant's Memorandum (emphasis added). All of the contractual provisions are unambiguous.  Even more unambiguous is the following admission from Nethers himself in his Affidavit:

> 16.   In August 1997, I decided to sell my interest in Automation Specialists back to the company for $1.00 in order to sever all ties with the company.
>
> 17.   In asking $1.00 as nominal consideration for my interest in Automation Specialists, *I understood that the only outstanding debt for which I was obligated was the Automation Specialists American Express account*, and Jerry Morrell, President of Automation Specialists, assured me at that time that he would pay off the American Express account.

(Emphasis added).

Nethers therefore understood his potential liability and obtained an oral assurance from Morrell that the latter would pay off the balance owing.  Indeed, in March of 1998, Nethers paid $8,848.46 to AMEX, an amount he believed at that time paid off all of the debt to AMEX.  Plaintiff's Motion at ¶ 22. Based on the foregoing, the court finds that Nethers is personally liable for the Company's debt to AMEX and AMEX is entitled to recovery on its Counterclaim.

The UPA defines in pertinent part unfair or deceptive trade practices as "a false or misleading oral or written statement knowingly made in connection with . . . the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person . . . ." NMSA § 57-12-2 (D).  *See Woodworker's Supply, Inc. v. Principal Mut. Life. Ins. Co.*, 170 F.3d 985, 994 (10th Cir. 1999); *Diversey Corp. v. Chem-Source Corp.*, 965 P.2d 332, 338 (N.M.Ct. App.), *cert. dismissed*, 9 P.3d 69 (1998).

Nethers claims that the delays in billing and an explanation therefor violated the UPA.  Nethers does not dispute that the debt was valid, only that AMEX was negligent in failing to debit and credit the proper accounts and "misrepresented" the status of his account when it did not include the $17,545.59 on what Nethers thought was his final statement from AMEX.  He apparently claims that AMEX deceived him by not correcting the error sooner or offering a full explanation of the errors when he disputed the claim.

The record submitted does not support a violation of the UPA in connection with the collection of a debt.  The improper posting of the credits and debits was an internal accounting procedure and not made in the extension of credit or the collection of a debt. The delayed billing statement is "collecting a debt," but because Nethers owed the debt there was nothing false or misleading about it; he may have been surprised, but he wasn't deceived. Finding no misrepresentation of deceptive trade practice, the court finds against Nethers and in favor of AMEX on the statutory UPA claim.  Similarly, the causes of action for negligent misrepresentation and fraud necessarily fail for lack of evidence indicating misrepresentation or deceit.

From the briefing, it appears that Nethers' claim for "negligent accounting" is in reality a claim for ordinary negligence in the delayed billing and explanation. The court will assume without deciding the AMEX owed a duty to Nethers for accurate and prompt billing procedures. The claim fails, however, for lack of any damages proximately caused by AMEX's conduct. *Baer v. Regents of the University of California*, 972 P.2d 9, 11 (N.M. Ct. App. 1998) ("negligence must proximately cause an injury for the defendant to be liable for the resulting damages")

Nethers claims that had he known of the outstanding debt, he would have (1) sold his interest to Morrell for more than $1.00; or (2) would have charged more for the sale of his technology to an outside company. He also claims injury to his credit rating and reputation.

When Nethers received the May billing showing that the card had been canceled, he took no action as, for example, questioning AMEX about the cancellation or inquiring about any outstanding debt before he sold his interest in the Company to Morrell for $1.00. As AMEX points out, Morrell wouldn't pay the known outstanding debt of over $8,000 so there was no reason to think he would have paid an additional $17,545.59. Moreover, the record submitted contains nothing more than Nethers' unsupported opinion that he would have done things differently or that he could have received an additional $17,545.59 for the sale of his technology.

As for the claimed damage to his reputation and credit rating, Nethers states that on one occasion he was unable to get a line of credit from Home Depot for $2,500 because AMEX had reported the disputed debt as a bad debt. He claims this is in violation

8

of the Fair Credit Reporting Act, which is not at issue in this case. The record submitted shows nothing more than speculation about the "cause" of Nethers' claimed "damage," which in reality is a debt owed. Nethers is not entitled to summary judgment on this claim.

As stated earlier in this opinion, Nethers has failed to submit any evidence showing the existence of "contract of guaranty" or any evidence showing he would not be personally liable for the Company's debt. Nethers points to no provision in the credit card agreement that AMEX breached. Accordingly, summary judgment in favor of AMEX and against Nethers is warranted on the breach of contract claims.

There being no genuine dispute as to any material facts, the court finds that summary judgment in favor of AMEX and against Nethers is warranted on all pending claims.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant's Motion for Summary Judgment on the Counterclaim [Doc. 36] is GRANTED;

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment on the Amended Complaint [Doc. 38] is GRANTED; and

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment on the Amended Complaint [Doc. 50] is DENIED.

IT IS SO ORDERED.

Richard L. Puglisi
United States Magistrate Judge
(Sitting by designation)